

# Fourth Court of Appeals
## San Antonio, Texas

## MEMORANDUM OPINION

No. 04-18-00328-CR

Carlos Omar **MARTINEZ RIVERA**,
Appellant

v.

The **STATE** of Texas,
Appellee

From the 229th Judicial District Court, Starr County, Texas
Trial Court No. 05-CRS-324
Honorable Alex William Gabert, Judge Presiding

Opinion by:    Liza A. Rodriguez, Justice

Sitting:        Rebeca C. Martinez, Justice
               Beth Watkins, Justice
               Liza A. Rodriguez, Justice

Delivered and Filed: May 15, 2019

AFFIRMED

A jury found appellant Carlos Omar Martinez Rivera ("Martinez Rivera") guilty of murder and sentenced him to fifty years' confinement, plus a fine and court costs. Martinez Rivera appeals from the trial court's judgment on the jury verdict. We affirm.

## Background

Martinez Rivera was a member of a group of migrants travelling to the United States without authorization in August 2005. Martinez Rivera and several other members of the migrant group were members of the Mara Salvatrucha gang, also known as "MS-13."

At around 8:00 p.m. on August 9, 2005, coyotes[1] transported the migrant group to a house in Miguel Alemán, México. When a gang member named Yogi complained to the coyotes at the house about how the migrants had been transported, the coyotes took him into another room, beat him, and removed him from the house in a bag or a quilt. Members of the migrant group presumed the coyotes killed Yogi. One migrant heard Martinez Rivera tell the other gang members: "They knocked down the hometown boy" or "home boy," meaning the coyotes "had beat [Yogi] or they had done something to him." The gang members, including Martinez Rivera, left the house and encountered Mexican police, who returned them to the house and then assisted the coyotes in transporting the migrant group to the river at around 11:30 p.m.

At around midnight, two guides who worked for the coyotes but who had not been at the house in Miguel Alemán led the migrant group across the river and under a border fence near the town of Roma, Texas. As the group was walking towards the border fence, one of the guides walked onto the highway to ensure there were no cars. As the guide did so, one migrant overheard Martinez Rivera ask another gang member named Julio "why wouldn't he hit him with a rock?" Later, just after one of the guides helped Martinez Rivera pass under the border fence, Martinez Rivera struck the guide on the head with a stick. One witness testified Martinez Rivera struck the guide first, and Julio "finished throwing [the guide] to the ground." Another witness testified Julio first struck the guide two or three times before Martinez Rivera took the stick from Julio's hands and struck the guide another two or three times while the guide was on the ground. Several migrants who observed the incident ran towards Roma and alerted police.

---

[1] The witnesses and counsel referred to the persons who smuggled the migrant group into the United States as "coyotes." Some of the witnesses used "coyote" and "guide" interchangeably, while one witness explained a "coyote" is a boss and a "guide" is a worker.

At around 3:00 a.m., Starr County Sheriff's Investigator Israel Rios was dispatched to the scene, where he observed the guide's "severely beaten" deceased body. The Starr County Justice of the Peace testified the victim's body was located about twenty yards from the border fence, inside the United States. The doctor who performed the autopsy testified the victim's injuries were consistent with blunt force trauma to the head caused by a stick or a bat.

Later that morning, Border Patrol agents located and arrested Martinez Rivera and another migrant in Roma. When Martinez Rivera fell asleep while in Border Patrol custody, the other migrant signaled to a Border Patrol agent and told him Martinez Rivera killed the guide. Both Martinez Rivera and the other migrant were charged with the guide's death, but charges against the other migrant were dropped in exchange for his testimony against Martinez Rivera. The jury also heard from two other witnesses who were part of the migrant group.

A jury convicted Martinez Rivera of murder and sentenced him to fifty years' confinement. Years later, Martinez Rivera filed an application for writ of habeas corpus in the trial court, and the trial court determined Martinez Rivera, through no fault of his own, was denied his right to appeal. The trial court granted Martinez Rivera the right to file an out-of-time appeal. This appeal followed.

### Improper Jury Argument

In his first issue, Martinez Rivera argues the trial court erred in permitting the prosecutor to state his "purely personal opinion . . . that [Martinez Rivera] is guilty" during closing arguments. In response, the State argues Martinez Rivera failed to preserve his issue for appeal or, alternatively, the prosecutor's argument was not improper and did not prejudice Martinez Rivera.

### A.     Relevant facts

Martinez Rivera argues the following statement made by the prosecutor during his closing argument was improper:

> We're here about this defendant Carlos Omar Martinez Rivera. That's who we, that's who you all have to try. That question. Did he do it? Did he participate? And ladies and gentlemen, I tell you that he did. Don't pick and choose that story that they want you to believe.

Immediately after the prosecutor made the statement, Martinez Rivera's counsel objected:

> Your Honor, we are going to object to that prior statement on using the State of Texas to, in other words, "I tell you that he did." That's improper argument, that's putting the State of Texas up on—for credibility and that's just improper argument.

The trial court responded: "Proceed with the argument, I'll rule on it after the argument."

At the conclusion of the prosecutor's closing argument, Martinez Rivera's counsel requested a curative instruction:

> Your Honor, I am going to ask that the court instruct the jury—I presume that the court granted my objections during the argument, uh, and I am going to ask that you instruct them that his statement that he knows that they did it is not something that they should consider. He's in effect testifying. He has pretty much implied to the jury that he perhaps, as being intimately aware of what goes on in these cases, he may know something that they were not—that they didn't hear, and so he has placed himself as a witness by saying that he knew, and they need to be instructed that that has no bearing, that it's not important, that it was a misstatement on his part, and I ask the court to instruct them as such.

In response, the prosecutor proposed the trial court reiterate to the jury that "what the lawyers say during argument is not evidence," and Martinez Rivera's counsel agreed: "Whatever instructions you give, even if it's a repetition of that one, I suppose, it would be something better than nothing."

The trial court then gave the jury the following additional instruction:

> Whatever the attorneys may say to you, as I have said to you in the past, is not evidence and it's not to be considered at all for purposes of a determination as to guilt or innocence. The attorneys never did raise their hands to say I'm telling you the truth so you have to disregard whatever they may say.

The trial court dismissed the jury to deliberate, and Martinez Rivera's counsel moved for a mistrial.

The trial court denied the motion.

**B.     Waiver**

As an initial matter, we consider whether Martinez Rivera preserved his issue for appellate review. To preserve a complaint of improper jury argument, a defendant must urge his objection until he obtains an express or implicit adverse ruling. *Hinojosa v. State*, 433 S.W.3d 742, 761 (Tex. App.—San Antonio 2014, pet. ref'd) (citing TEX. R. APP. P. 33.1(a); *Mathis v. State*, 67 S.W.3d 918, 926–27 (Tex. Crim. App. 2002)). In addition to objecting to the improper statement, the defendant must request a curative instruction if the error is curable and make a motion for a mistrial. *See id.*

The State argues Martinez Rivera failed to preserve his issue because trial counsel's objection "was too vague and untimely." We disagree. Martinez Rivera's counsel objected during the prosecutor's closing argument and again after the prosecutor finished his argument. It is clear from the record that trial counsel objected on the basis that the prosecutor was testifying to his personal opinion about Martinez Rivera's guilt. Trial counsel also properly requested a curative instruction, which was given, and a mistrial, which was denied. Accordingly, we conclude Martinez Rivera's first issue is preserved for appellate review and turn now to the merits.

**C.     Standard of review and analysis**

Where, as here, the trial court implicitly sustains the defense objection to improper jury argument and grants the requested curative instruction, the only adverse ruling to be reviewed is the trial court's denial of the motion for mistrial. *Hawkins v. State*, 135 S.W.3d 72, 76–77 (Tex. Crim. App. 2004) (en banc). We review the trial court's denial of the motion for mistrial for abuse of discretion and will only reverse in extreme circumstances in which the prejudice was incurable. *Id.* at 77.

A prosecutor's argument is permissible if it is: (1) summation of the evidence; (2) reasonable deduction from the evidence; (3) an answer to the argument of defense counsel; or (4)

a plea for law enforcement. *Gallo v. State*, 239 S.W.3d 757, 767 (Tex. Crim. App. 2007). However, "[a] prosecutor may not convey to the jury during argument that [he] possesses specialized knowledge or expertise about a contested factual issue in the case." *Garcia v. State*, 246 S.W.3d 121, 145 (Tex. App.—San Antonio 2008, pet. ref'd) (citing *Jackson v. State*, 17 S.W.3d 664, 675 (Tex. Crim. App. 2000)). "Such comments pose a danger of influencing the jury's opinion in deciding the issue." *Id.*

Martinez Rivera argues the prosecutor's statement—"I tell you that he did it"—was improper because it is the prosecutor's personal opinion. The State responds the prosecutor's statement was reasonably deduced from the facts and was made in response to Martinez Rivera's argument that Julio (not Martinez Rivera) committed the crime. Assuming, as it appears the trial court did, that the prosecutor's statement was improper, we consider whether Martinez Rivera was harmed by balancing three factors: "(1) the severity of the misconduct (prejudicial effect), (2) curative measures, and (3) the certainty of the punishment assessed absent the misconduct (likelihood of the same punishment being assessed)." *See Hawkins*, 135 S.W.3d at 77.

In this case, any prejudicial effect was minimal, given that Martinez Rivera complains of a single statement "embedded within other remarks that invited the jury to draw a *legitimate* inference from" the evidence. *See Archie v. State*, 340 S.W.3d 734, 741 (Tex. Crim. App. 2011) (emphasis in original) (holding trial court did not abuse its discretion in denying mistrial based on prosecutor's comment on defendant's failure to testify). Specifically, the prosecutor made the statement as part of a broader argument that the eye witness testimony demonstrates Martinez Rivera, with or without the assistance of Julio, murdered the guide. In addition, the trial court promptly addressed any prejudice with a curative instruction reminding the jury that counsel's statements are not evidence and should not be considered.

Finally, as will be discussed further below, the weight of the evidence against Martinez Rivera suggests it is very likely he would have been assessed the same punishment regardless of the prosecutor's statement. Several witnesses testified Martinez Rivera was a member of the Mara Salvatrucha gang and was attempting to enter the United States without authorization when he struck the victim in retaliation for the presumed murder of another gang member. On this record, Martinez Rivera has failed to show the jury likely would decide the issue of punishment differently. Therefore, because Martinez Rivera has not demonstrated harm, we conclude the trial court did not abuse its discretion in denying Martinez Rivera's motion for mistrial based on the prosecutor's statement.

Martinez Rivera's first issue is overruled.

## Ineffective Assistance of Counsel

In his second issue, Martinez Rivera argues his trial counsel was ineffective for failing to request a sudden passion instruction during the punishment phase of the trial. The State responds the silent record on appeal does not support a conclusion that Martinez Rivera's trial counsel was ineffective, and, in any event, Martinez Rivera was not entitled to a sudden passion instruction.

### A. Standard of review

To prevail on a claim of ineffective assistance of counsel, Martinez Rivera must establish by a preponderance of the evidence that: (1) trial counsel's performance fell below an objective standard of reasonableness; and (2) Martinez Rivera was prejudiced by trial counsel's defective performance. *Thompson v. State*, 9 S.W.3d 808, 812 (Tex. Crim. App. 1999) (citing *Strickland v. Washington*, 466 U.S. 668 (1984)). To determine whether trial counsel's performance was deficient, we look to the totality of the representation and the particular circumstances of the case. *Id.* at 813.

**B.      Analysis**

To demonstrate ineffective assistance of counsel based on failure to request a sudden passion instruction, Martinez Rivera must demonstrate he was entitled to the instruction, there was no possible trial strategy for not requesting the instruction, and Martinez Rivera was prejudiced. *Newkirk v. State*, 506 S.W.3d 188, 192 (Tex. App.—Texarkana 2016, no pet.). "[M]erely showing that a sudden-passion instruction would have given the jury another sentencing [option] is not enough to demonstrate prejudice under *Strickland*." *Id.* at 197. Rather, Martinez Rivera "must demonstrate a reasonable probability that, but for counsel's failure to request the sudden-passion instruction, he would have received a less harsh sentence." *Id.* at 197–98 (citing *Potts v. United States*, 566 F. Supp. 2d 525, 537 (N.D. Tex. 2008)).

Assuming without deciding Martinez Rivera was entitled to a sudden passion instruction and would have received it had his trial counsel requested it, we consider whether Martinez Rivera established the jury would have imposed a less harsh sentence. The jury heard the following evidence. Several members of the migrant group testified Martinez Rivera was a member of the Mara Salvatrucha gang. One witness testified he heard Rivera tell other gang members, referring to a gang member who was beaten and presumably killed by the coyotes: "They knocked down the hometown boy" or "home boy." Later, the same witness overheard Rivera asking another gang member "why wouldn't he hit him [one of the guides] with a rock?"

Each of the migrant witnesses testified the victim was not present at the house in Miguel Alemán and did not threaten or injure Martinez Rivera or anyone else. One witness testified he did not believe Martinez Rivera or the other gang members were afraid of the victim, and another witness testified Martinez Rivera struck the victim for "revenge." Three witnesses testified they personally observed Martinez Rivera strike the victim with a stick. Each of these witnesses testified the victim fell to the ground, and there was no evidence the victim fought back. There also was no

evidence that Martinez Rivera sustained any injuries. The victim, in contrast, was "severely beaten."

In light of this evidence, we conclude the jury had before it sufficient evidence to determine a sentence of fifty years' imprisonment was warranted. *See id.* at 198–99 (holding evidence that defendant told others he was going to kill the victim and then did so, lack of evidence of a mutual struggle, and evidence that victim was retreating when killed was sufficient to conclude defendant was not prejudiced by lack of sudden passion instruction). Therefore, even assuming Martinez Rivera was entitled to a sudden passion instruction, Martinez Rivera has failed to establish a reasonable probability that, but for his trial counsel's failure to request the instruction, he would have received a less harsh sentence.

Martinez Rivera's second issue is overruled.

## Conclusion

Because we overrule Martinez Rivera's issues on appeal, we affirm the trial court's judgment.

Liza A. Rodriguez, Justice

DO NOT PUBLISH